IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ROGER NALLS,                      §
                                  §
                    Plaintiff,    §
                                  §  Civil Action No. 3:08-CV-0534-D
VS.                               §
                                  §
MICHAEL ASTRUE,                   §
COMMISSIONER OF THE SOCIAL        §
SECURITY ADMINISTRATION,          §
                                  §
                    Defendant.    §

MEMORANDUM OPINION

Plaintiff Roger Nalls ("Nalls") brings this action under
§ 205(g) of the Social Security Act (the "Act"), 42 U.S.C.
§ 405(g), for judicial review of the final decision of the
Commissioner of Social Security ("Commissioner") denying his
application for a period of disability and disability insurance
benefits under Title II of the Act. For the reasons that follow,
the court vacates the Commissioner's decision and remands this case
for further proceedings.

I

Nalls was born in 1950, is a veteran of the Vietnam War, and,
although he did not complete high school, obtained his general
equivalency degree. He has previously worked as an electrician, a
correctional officer, and a correctional officer supervisor. Nalls
applied for disability insurance benefits on July 8, 2005, alleging
that he became disabled on May 7, 2005 due to Post Traumatic Stress
Disorder ("PTSD"). The Commissioner denied Nalls's application

initially and on reconsideration, and Nalls requested a hearing. At the hearing, the Administrative Law Judge ("ALJ") concluded that Nalls was not disabled. The ALJ found at step two of the five-step sequential process that Nalls's "anxiety related disorder" was a severe impairment. He found at step three that Nalls's impairments were not severe enough to meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, based on his finding that Nalls retained a residual functional capacity ("RFC") to perform a full range of light work, the ALJ concluded that Nalls was not disabled because he could perform his past relevant work as a correctional officer supervisor. Nalls sought review by the Appeals Council, which denied his request. The ALJ's decision thus became the final decision of the Commissioner. Nalls now seeks judicial review.

II

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an

error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted).

"The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990) (per curiam)). "To make a finding of 'no substantial evidence,' [the court] must conclude that there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983). Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner rather than for this court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)

(per curiam).

For purposes of social security determinations, "disability" means an inability to engage in substantial gainful activity because of any medically determinable physical or mental impairment or combination of impairments that could be expected either to result in death or to last for a continuous period of not fewer than 12 months. 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner uses a five-step sequential inquiry. *Leggett*, 67 F.3d at 563; *Martinez*, 64 F.3d at 173-74. The Commissioner must consider whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in Appendix 1, Subpart P, Regulation No. 4; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. *Leggett*, 67 F.3d at 563 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520 (2007). "The burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner] at step five." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F. 2d 630, 632-33 (5th Cir. 1989) (per curiam)). At step five, once the Commissioner demonstrates that other jobs are available to a claimant, the burden of proof shifts

to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (per curiam).

When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact. The court weighs four elements of proof to decide if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history. *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (per curiam)). "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557. "If the ALJ does not satisfy [this] duty, [the] decision is not substantially justified." *Id.* Reversal of the ALJ's decision is appropriate, however, "only if the applicant shows that he was prejudiced." *Id.* The court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced. *See Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

Nalls contends that the ALJ's decision is deficient for three reasons: (1) the ALJ's assessment of the limitations resulting from Nalls's mental impairments is not supported by substantial evidence; (2) the ALJ's RFC finding is not supported by substantial evidence; and (3) the ALJ failed to properly consider the opinions of Nalls's treating sources. Without suggesting a view on the merits of the first two arguments, the court concludes that it need now only consider whether the ALJ erred procedurally in considering the medical opinions of Nalls's treating sources.

A

The record in this case contains Nalls's medical records from the Veterans Administration Medical Center ("VA") in Dallas covering the period of January 13, 2005 to December 15, 2006.[1] The records indicate that Nalls visited the VA approximately every two months during this period for treatment and monitoring. The records consist primarily of progress notes from his treating physician, Stacy W. Scannell, M.D. ("Dr. Scannell"), and notes from individual therapy sessions with his treating clinical psychologist, Earl T. Patterson, Ph.D. ("Dr. Patterson"). Nalls's treatment and monitoring appears to focus on his PTSD, which stems from his service in Vietnam, but he has also been diagnosed with

---

[1]The ALJ's decision cites a VA medical record from July 2, 2007, but the court could not find this in the case record.

alcohol dependence (although later progress notes report that this is in remission), a depressive disorder, nicotine dependence, cervical radiculopathy, hypertension, and gastroesophageal reflux disease ("GERD"). Both treating sources report after almost every visit that Nalls suffers from severe PTSD and is fully and permanently disabled by the disorder. For example, after conducting a structured clinical interview to determine the severity of Nalls's PTSD, Dr. Patterson concluded:

> Mr[.] Nalls currently meets criteria for the diagnosis of Post Traumatic Stress Disorder. In fact he has many symptoms in excess of those required to make the diagnosis, and many of his symptoms are particularly severe, thus his condition by DSM IV standards is severe. Further interview data make it clear that his PTSD symptoms have marke[d]ly impaired his interpersonal relationships (3 divorces, no relationships with children of past marriages), and markedly impaired his occupational relationships (lost and abondoned [sic] many jobs due to PTSD symptoms). He is unemployable. His current GAF = 35.[2]

R. 157. Dr. Scannell similarly reported that Nalls "is clearly fully and permanently disabled due to PTSD"; "is unable to stay

_____

[2]"GAF" stands for Global Assessment of Functioning. According to *DSM-IV*, the *Diagnostic and Statistical Manual of Mental Disorders* (Fourth Edition), published by the American Psychiatric Association, a GAF score between 31 and 40 indicates that a person suffers "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." *Id.* at 34.

alone, needs his wife or another person present to assist him when symptoms become severe or when he completely loses control"; and "is clearly unable to be employed." R. 160. Dr. Scannell also reported on several occasions that Nalls has a GAF of 35. R. 148, 151, 162. These opinions are part of detailed reports discussing Nalls's symptoms. The recurring symptoms the medical sources report include nightmares, intrusive memories, constant and extreme hyper-vigilance, extreme avoidance of people and public places, occasional wishes for/thoughts of death, and frequent homicidal ideation when angry.

## B

"The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). In the instant case, the ALJ's decision contains very little reasoning. The vast majority of the decision appears to contain boilerplate language setting forth the procedure the ALJ must follow. The portions of the decision that specifically address Nalls's claim can be summarized briefly.

At step two of the five-step inquiry, the ALJ found: "The claimant has the following severe impairment: Anxiety related disorder (20 CFR 404.1520(c))." R. 12. The decision offers no explanation for how he reached this conclusion. At step three, the ALJ found that Nalls's impairment did not meet or medically equal

a listed impairment. In so concluding, he determined that Nalls had mild restrictions in activities of daily living, moderate difficulties in social functioning, mild difficulties with concentration, persistence or pace, and has experienced no episodes of decompensation. R. 13. The decision contains no reasoning for these determinations and cites to no supporting evidence in Nalls's record. The ALJ next concluded that Nalls had an RFC to perform the full range of light work. Here, for the first time, the decision references Nalls's specific impairments. The decision first briefly summarizes Nalls's testimony from his hearing before the ALJ. *See* R. 14. Then, in one sentence, it summarizes the 169 pages of medical records from Nalls's treatment at the VA: "Medical records from the Veterans Administration show reflect [sic] a diagnosis of depression and Post Traumatic Stress Disorder with the primary problem being ongoing alcohol abuse."[3] *Id.* It then lists symptoms set forth in Nalls's most recent medical record from the

---

[3]This is the only time in the decision that the ALJ mentions alcohol abuse. It is unclear how much weight the ALJ gave to this apparently important finding. It is also not evident that the VA medical records reflect that Nalls's primary problem is alcohol abuse. The opinions of Drs. Scannell and Patterson primarily concern the disabling effects of Nalls's PTSD. It is not for the court to weigh the evidence; however, the court must determine whether the ALJ used the proper legal standards to evaluate the evidence. *Ripley*, 67 F.3d at 555. The ALJ is free to find that the evidence supports the conclusion that Nalls's primary problem is alcohol abuse, but he cannot reach this result without assessing the opinions of Dr. Scannell and Dr. Patterson according to the required procedures. *See infra* § III(C) (discussing required procedures for evaluating opinions of treating sources).

VA.[4]  *Id.*  The ALJ describes the reasoning behind the RFC determination as follows: "After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  R. 15.  Finally, the ALJ concluded that Nalls's RFC does not preclude him from performing his past relevant work as a corrections officer supervisor.  *Id.*  The decision does not mention Dr. Scannell or Dr. Patterson, nor does it address their opinions.[5]

C

"A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence."  *Newton*, 209 F.3d at 455 (citations and quotation marks omitted).  The ALJ may give little or no weight to

_____

[4]As noted above, this medical record, which the ALJ states is dated July 2, 2007, is not included in the record provided to this court.

[5]In what appears to be boilerplate language, the decision states: "The undersigned has considered the opinions of the Texas Disability Determination Service's Medical consultants, as well as other treating, examining and non-examining medical sources in compliance with Social Security Ruling 96-6p."  R. 15.  It is not clear from the decision, however, that the ALJ considered the opinions of Nalls's treating sources.

a treating source's opinion, however, if good cause is shown. *Id.* at 455-56. "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456. "[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Id.* at 453. Section 404.1527(d)(2) of the Social Security Administration ("SSA") Regulations sets forth six factors that the ALJ must consider before giving less than controlling weight to a treating source's opinions: (1) length of treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) the support of the source's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the source. 20 C.F.R. § 404.1527(d)(2); *see also Newton*, 209 F.3d at 456.

D

Nalls contends that the ALJ failed to properly consider the opinions of his treating sources, Drs. Scannell and Patterson. He

maintains that, despite the doctors' numerous reports indicating that he is totally disabled due to PTSD and their frequent opinions concerning the severity of his condition, the ALJ did not mention their opinions in his decision. Implicit in Nalls's argument is the premise that the ALJ gave less than controlling weight to the opinions of his treating sources, and he explicitly avers that the ALJ erred by failing to analyze their opinions under the six-factor test of § 404.1527(d)(2). Before the court considers whether the ALJ gave less than controlling weight to the doctors' opinions, it will consider whether the opinions were of the type that must be analyzed under the six-factor test before they can be rejected.

1

The Commissioner contends that the opinions of Nalls's treating sources are not the type that warrant controlling weight. He asserts that a treating source's opinion that a claimant is "disabled" or "unable to work" warrants no special significance, and he cites *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (per curiam), for this proposition. The Commissioner's reliance on *Frank* is misplaced.

In *Frank* the court held that a treating physician's brief handwritten and conclusory note to the SSA stating that the claimant was "unable to work" was not a medical opinion that must be analyzed under the six-factor test before being rejected. *Id.; see also* 20 C.F.R. § 404.1527(e) (providing that it is

Commissioner's responsibility to determine whether claimant is "disabled" or "unable to work" and that opinions on these issues do not warrant special significance). The opinions in the present case, however, are distinguishable from the one at issue in *Frank*. Although Drs. Scannell and Patterson both conclude that Nalls is fully disabled by PTSD and unable to work, these conclusions are but part of numerous opinions concerning the nature and severity of Nalls's disorder. The ALJ is not permitted to reject all of a treating source's medical opinions simply because the source also opined——even if in a conclusory manner——that the claimant is "disabled" or "unable to work." Stated another way, an opinion that is sufficiently detailed and specific to mandate that it be analyzed under the six-part test does not become inadequate simply because it contains conclusory statements as well.

The Commissioner also argues that the opinions of Nalls's treating sources are not supported by objective medical evidence. The Commissioner asserts that there is no evidence of psychological testing, and that the treating sources appear to have based their findings solely on the subjective statements of Nalls and his wife. The court recognizes that a treating source's opinion does not warrant controlling weight if it "is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques." *Newton*, 209 F.3d at 456. But the Commissioner's assertion that the opinions of the treating sources are not supported by medically

acceptable clinical evidence is undercut by Nalls's extensive medical records. Dr. Patterson's opinions are based on individual therapy sessions and structured clinical interviews with Nalls, and the reports from these sessions describe in detail the symptoms and observations that underlie Dr. Patterson's medical opinions. Dr. Scannell's notes similarly contain detailed clinical diagnostic evidence. Although the treating sources considered as a part of their treatment the subjective statements of Nalls and his wife, this does not of itself indicate that their opinions are not supported by medically acceptable evidence. The opinions of Drs. Scannell and Patterson are supported by medically acceptable evidence.

The court also notes that neither the Commissioner nor the ALJ's decision asserts that the opinions of Nalls's treating sources are controverted by reliable medical evidence from another treating or examining physician,[6] and the court cannot conclude from the ALJ's decision that he considered any controverting medical evidence.

Accordingly, the court concludes that the ALJ could not reject the medical opinions of Drs. Scannell and Patterson regarding the

---

[6]The record contains the opinions of State Medical Consultant Dr. Robert White ("Dr. White"). The ALJ's decision does not specifically refer to Dr. White or his opinions, and the Commissioner asserts that the ALJ did not rely on Dr. White's opinion. *See* D. Br. 6 ("The ALJ did not rely upon Dr. White's opinion because the substantial evidence of record did not support his findings.").

nature and severity of Nalls's PTSD without performing a detailed analysis of their views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2). *See Newton*, 209 F.3d at 453.

2

It is undisputed that the ALJ did not analyze the opinions of Drs. Scannell and Patterson under the six factors. In his decision, the ALJ mentions neither the treating sources nor the sources' opinions. Although this also means that the ALJ's decision does not explicitly reject their opinions, it is clear from the ALJ's findings that he did not give them controlling weight.[7] Although the ALJ is free to find on remand that the evidence does not support the conclusion that Nalls is disabled, he cannot reach this result without assessing the opinions of Nalls's treating sources, Drs. Scannell and Patterson, as required by the administrative procedures, including application of the six-factor test of § 404.1527(d).

---

[7]The court offers two examples of opinions that are inconsistent with the ALJ's findings concerning Nalls's limitations and his conclusion that Nalls has an RFC to perform a full range of light work. Dr. Scannell reported that Nalls "is unable to stay alone, needs his wife or another person present to assist him when symptoms become severe or when he completely loses control." R. 160. Both Drs. Scannell and Patterson concluded that Nalls had a GAF of 35. *E.g.*, R. 157, 162.

Nalls raises other issues on appeal, but the court need not address them because the Commissioner's decision on remand may render them moot.  On remand, however, the ALJ is free to revisit these issues in his decision.  The ALJ is also encouraged to include more of his reasoning in the text of the decision.[8] Although the court does not expect the ALJ to address every piece

---

[8]In particular, more discussion of Nalls's credibility is needed.  The ALJ's decision indicates that he concluded that Nalls was not disabled primarily because Nalls's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible."  R. 15.  It does not explain why they were found not to be credible.  Social Security Ruling 96-7p provides, in relevant part:

> The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.  It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.  This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

SSR 96-7p, 1996 WL 374186, at *4.

of evidence and every step of his reasoning process, a decision should include at least sufficient detail for the reviewing court to determine whether the proper legal standards were used to evaluate the evidence. *See Ripley*, 67 F.3d at 555. On this point, the court echoes the opinion of *Zblewski v. Schweiker*:

> This court is not unmindful of the heavy and unique burden placed upon ALJs in Social Security Act cases. We emphasize that we do not require a written evaluation of every piece of testimony and evidence submitted. However, a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position.

*Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984).

\*    \*    \*

The Commissioner's decision is VACATED and this matter is REMANDED to the Commissioner for further proceedings consistent with this memorandum opinion.

December 8, 2008.



_____
SIDNEY A. FITZWATER
CHIEF JUDGE